Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6221 | **DATE** | 12/6/2001 |
| **CASE TITLE** | Great West Casualty Company vs. Rogers Cartage Company, Tankstar USA, Donel Johnson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff Great West's motion for summary judgment and Defendant Rogers Cartage's motion for summary judgment.

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)
(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, summary judgment is granted in favor of Great West [28-1]. Accordingly, Rogers' cross motion for summary judgment is denied [33-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 12 2001 date docketed | |
| X | Docketing to mail notices. | | | 47 |
| X | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| klb (lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREAT WEST CASUALTY COMPANY, a Nebraska Corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 00 C 6221<br>)<br>) HONORABLE DAVID H. COAR |
| ROGERS CARTAGE COMPANY, an Illinois Corporation, TANKSTAR USA, INC., a Wisconsin Corporation, and DONEL JOHNSON, An Individual | )<br>)<br>)<br>)<br>) |
| Defendants. | ) DOCKETED<br>) DEC 1 2 2001 |

## MEMORANDUM OPINION AND ORDER

Great West Casualty Company ("Great West") filed a five count complaint for a Declaratory Judgment pursuant to 28 U.S.C. § 2201 to resolve a controversy concerning the applicability of an insurance policy Great West issued in favor of Rogers Cartage Company ("Rogers"). Before this court are cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") by Plaintiff Great West and Defendant Rogers. Defendant Donel Johnson adopted the summary judgment motion of Rogers. For the reasons set forth below, plaintiff's motion for summary judgment is granted.

### I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.

-1-

Civ. P. 56(c); Michael v. St. Joseph County, et. al, 259 F.3d 842, 845 (7th Cir. 2001). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Michael, 259 F.3d at 845; Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, see Wolf v. Northwest Ind. Symphony Soc'y, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, see Albiero, 246 F.3d at 932. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552-53. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250, 106 S. Ct. at 2511.

On cross-motions for summary judgment, each movant must individually satisfy the requirements of Rule 56. Proviso Association of Retarded Citizens v. Village of Westchester,

914 F. Supp. 1555, 1560 (N.D. Ill. 1996); Chicago Truck Drivers, Helpers and Warehouse Workers Union (Ind.) Pension Fund v. Kelly, No. 95 C 501, 1996 U.S. Dist. LEXIS 12901, 1996 WL 507258, *3 (N.D. Ill. 1996). Thus, the traditional standards for summary judgment still apply even though both parties have moved for summary judgment. Blum v. Fisher and Fisher, Attorneys at Law, 961 F. Supp. 1218, 1222 (N.D. Ill. 1997). The Court thus considers the merits of each cross-motion separately and draws all reasonable inferences and resolves all factual uncertainties against the party whose motion is under consideration. O'Regan v. Arbitration Forums, Inc., 246 F.2d 975, 983 (7th Cir. 2001); Chicago Truck Drivers, 1996 WL 507258 at *3. This "Janus-like perspective... sometimes forces the denial of both motions," but only where there are material facts in dispute. Buttitta v. City of Chicago, 803 F. Supp. 213, 217 (N.D. Ill. 1992), aff'd, 9 F.3d 1198 (7th Cir. 1993).

## II. Factual Background

The following facts are taken from the parties' Local Rule 56.1(a)(3) and (b)(3) Statement of Material Facts. Rogers is a trucking and cartage company specializing in transporting chemicals, including but not limited to toxic and hazardous chemicals. Great West issued a Commercial Catastrophe Policy insuring Rogers against, among other things, "Personal Injury" liability arising out of an "occurrence" arising during the policy period of June 1, 1997 to June 1, 1998 (the "Great West Policy"). The Great West Policy provides coverage to Rogers for "Personal Injury" in the amount of $10,000,000 per occurrence in excess of a $10,000 self-insured retention. Condition C of the Great West Policy required Rogers to provide Great West written notice both "[u]pon the happening of an "occurrence" reasonably likely to involve [Great West] under this policy" and of "any claim made on account of such "occurrence"..."

On April 15, 1998, Rogers' former employee, Donel Johnson filed a lawsuit against Rogers in the Circuit Court of St. Clair County, Illinois captioned Donel Johnson v. Rogers Cartage Company, Case No. 98 L 310A (the "Johnson Action"). The Johnson Action alleged that Rogers unlawfully terminated Johnson in February, 1998 in retaliation for Johnson's refusal to engage in alleged illegal conduct and/or refusal to acquiesce in Rogers' alleged illegal conduct.[1] Rogers engaged the law firm Michael Best & Friedrich to defend Rogers in the Johnson Action shortly after receiving Johnson's summon and complaint. On October 5, 1998, Tankstar acquired all of the stock of the JonPet Company, the holding company of Rogers, and, thereafter, Rogers became a wholly owned subsidiary of Tankstar.[2] On or about March 3, 2000, Johnson was permitted to file an Amended Complaint to name Tankstar as a defendant in the Johnson Action.

On or about June 10, 1999, Rogers' defense counsel, Steven Teplinsky, prepared a response to an audit letter directed to Tankstar (the new owner of Rogers' stock) in which he provided an assessment of Rogers' potential liability in respect of the Johnson Action. Rogers

---

[1] Rogers disputes the nature of the claim in the Johnson Action. The amended complaint, however, very clearly states that it is an action for retaliatory discharge. The allegations in the complaint set forth facts that support Johnson's claim that he was fired for his failure to engage/acquiesce in alleged illegal conduct. Specifically, the complaint alleges that Rogers improperly disposed of hazardous substances and that Johnson was fired for his alleged refusal to improperly dispose of said materials.

[2] The Great West Policy provides coverage only to those entities that are a "Named Insured" or "insured" under the Policy. Tankstar is not identified as a "Named Insured" either on the Information Page or elsewhere in the Great West Policy. It is undisputed that Tankstar does not otherwise meet the definition of an "insured" under the Great West Policy. Further, Tankstar did not own and was not in any other way affiliated with Rogers on February 23, 1998 (the date Rogers terminated Johnson) or on April 15, 1998 (the date Johnson filed the Johnson Action).

did not notify Great West of the Johnson Action or the events giving rise to it until on or about June 14, 2000. Great West issued "reservation of rights" letters to Rogers based on late notice and other defenses but agreed to defend Rogers subject to the reservations. Great West reserved its right to deny coverage for offenses committed "with actual malice" and for punitive damages. Great West also reserved its right to request and receive reimbursement for any and all defense costs it incurred should there be no coverage. Pursuant to the court order in the Johnson Action, Rogers and Tankstar were required to disclose all expert witnesses on or before June 1, 2000. All discovery in the Johnson Action closed on August 1, 2000, less than two weeks after Great West received a copy of Rogers' file.

On or about August 23, 2000, James Discenza assumed responsibility on behalf of Great West for adjusting the claim asserted against Rogers through the Johnson Action. On September 7, 2000, Discenza prepared a Memorandum to Darrell Law, Great West's Vice President of Claims, and Patrick Sullivan, his supervisor, indicating, among other things, that the "reporting of a lawsuit this late in discovery can pose a serious issue with regard to late notice," that a Declaratory Relief Action should be filed immediately on behalf of Great West in order to determine whether Great West has been prejudiced by the actions of Rogers and Tankstar and that, if the court agrees, "then there would be no coverage obligation on the part of Great West Casualty Company with regard to this matter." Discenza also wrote that St. Claire County, Illinois was an "extremely plaintiff oriented venue," and that he believed that "the likelihood of a verdict for plaintiff is significant." Finally, he indicated that "the chances of a high verdict value in this case is also a real possibility."

On December 5, 2000, the trial judge in the Johnson Action conducted a settlement conference during which Johnson's counsel demanded $750,000 and Rogers, Tankstar and Great West offered $75,000 to settle. There was some dispute about the settlement authority that counsel for Rogers and Tankstar had during that conference. The discussion between Johnson's counsel and counsel for Rogers and Tankstar became tense as a result of the dispute regarding whether Rogers' and Tankstar's counsel had previously proposed settlement in the amount of $150,000. Mr. Discenza advised defense counsel that he intended to conduct the next set of settlement discussions. Johnson has not articulated any amount Johnson would have accepted to settle the Johnson Action at any time during trial or any other time after December, 2000. The Johnson Action did not settle and, instead, was tried to a jury from February 5 through 9, 2001. Even though counsel for Rogers recognized some exposure for punitive damages prior to closing arguments they did not have a conversation with James Discenza regarding an evaluation of the case. On February 9, 2001 the trial court in the Johnson Action entered judgment on a jury verdict in Johnson's favor and against Rogers and Tankstar in the amount of $1.132 million in compensatory damages and $1 million in punitive damages on Johnson's retaliatory discharge claim.

### III. Discussion

A.  Great West's Motion for Summary Judgment

In its Motion for Summary Judgment, Plaintiff contends that 1) Tankstar is not an insured and is not entitled to information or defense under the policy; 2) there is no coverage for the punitive damages awarded against Rogers; 3) Rogers' failure to provide timely notice precludes

coverage; and 4) Great West should not be estopped from asserting its policy defenses. Each of these arguments will be addressed in turn.

1) Tankstar is not an insured

In Count IV of its Amended Complaint, Great West seeks a declaration that Tankstar is not a "Named Insured" under the Great West Policy and otherwise is not entitled to coverage as an "insured" under that Policy. Tankstar admits, in its response to Plaintiff's undisputed facts, that: a) the Great West Policy provides coverage only to those entities that qualify as a "Named Insured" or "insured;" b) Tankstar is neither an "insured" or "Named Insured" as defined by the Great West Policy; c) that it had no ownership interest or affiliation in Rogers on either February 23, 1998 or April 15, 1998; and d) Tankstar did not succeed to any rights Rogers may have under the Great West Policy. As there is no material issue of fact regarding Tankstar's status as a non-insured entity under the Great West Policy, Great west is entitled to judgment in its favor on Count IV of its Amended Complaint as a matter of law.

2) Great West need not indemnify for punitive damages

Great West argues that there is no coverage under the Great West Policy for the punitive damages awarded against Rogers because such an award is against public policy. Rogers, however, asserts that Great West is estopped from denying coverage for the punitive damages award. Under Illinois law (which all parties agree applies), the estoppel doctrine provides that when an insurer, with a duty to defend, asserts that a complaint alleging coverage is not covered under the policy the insurer may not refuse to defend the insured. Hartford Fire Ins. Co. v. Whitehall Convalescent and Nursing Home, Inc., 321 Ill. App.3d 879, 888, 748 N.E.2d 674, 254 Ill. Dec. 956 (Ill. App. Ct. 2001). The insurer must defend that suit under a reservation of rights

or seek a declaratory judgment that there is no coverage. Id. If the insurer fails to do this, it is estopped from later raising any policy defenses to coverage. Waste Management, Inc. v. International Surplus Lines Insurance Co., 144 Ill. 2d 178, 207-08, 579 N.E.2d 322, 161 Ill. Dec. 774 (1991). Estoppel, however, cannot be used to create coverage that never existed. Nationwide Mutual Ins. Co. v. Filos, 285 Ill. App.3d 528, 673 N.E.2d 1099 (Ill. App. Ct. 1996). In this case, it is undisputed that Great West defended Rogers under a reservation of rights.

In Illinois, it is generally against public policy to insure against liability for punitive damages arising out of the insured's own misconduct. Beaver v. Country Mut. Ins. Co., 95 Ill. App.3d 1122, 1234, 420 N.E.2d 1058, 1060 (Ill. App. Ct. 1981). Johnson sued Rogers on a retaliatory discharge theory and recovered punitive damages against Rogers solely on that theory. Rogers, relying on International Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Illinois, argues that punitive damages are recoverable from Great West because under the policy, damages are not limited to compensatory damages. 209 Ill. App.3d 144, 568 N.E.2d 9, 154 Ill. Dec. 9 (Ill. App. Ct. 1990). In that case, however, the insured was charged a premium for punitive damages. International Surplus Lines, 209 Ill. App.3d at 148, 568 N.E.2d at 11. There is no such claim in this case. While there is no provision in the Great West policy which provides for punitive damages, it is undisputed that the Great West Policy does not contain a specific exclusion for punitive damages.

In Illinois, punitive damages based on vicarious liability are insurable but punitive damages for direct liability are not recoverable. International Surplus Lines, 209 Ill. App.3d at 147, 568 N.E.2d at 10. Rogers claims that it was vicariously liable for the awarded punitive damages and thus is entitled to coverage. In Buckner v. Atlantic Plant Maintenance, Inc.,

however, the Illinois Supreme Court expressly held that a retaliatory discharge claim cannot be asserted against any individual employee of the employer, but rather is an action arising out of the employer's own misconduct. 182 Ill.2d 12, 230 Ill. Dec. 596, 694 N.E.2d 565 (Ill. 1998). Thus, the punitive damages awarded against Rogers in the Johnson Action were based on Rogers' own misconduct. Since Rogers participated in the wrongful conduct, the rationale underlying the policy against permitting a wrongdoer to escape punishment through insurance coverage is implicated and any coverage for punitive damages must be denied. Since there are no material facts in dispute, Great West is entitled to judgment as a matter of law on its claim that it is need not indemnify Rogers for punitive damages awarded in the Johnson Action.

3) Delay in Notice

Great West asserts that due to Rogers delay in notifying Great West of the occurrence giving rise to the lawsuit, it need not indemnify Rogers for the damage award granted against it in the Johnson Action. Under Illinois case law, an insurer's lack of duty to defend or indemnify an insured based on late notice of an occurrence or late notice of a suit are treated differently. See Montgomery Ward & Co., Inc. v. Home Ins. Co., 753 N.E.2d 999, 1005 (Ill. App. Ct. 2001); Rice v. AAA Aerostar, 294 Ill. App.3d 801, 807, 229 Ill. Dec. 20, 690 N.E.2d 1067 (Ill. App. Ct. 1998). Rogers had a contractual duty to give notice to Great West "[u]pon the happening of an "occurrence" reasonably likely to involve [Great West] under this policy" and of "any claim made on account of such "occurrence"..." Notice provisions such as the one at issue in this case are intended to ensure that the insurer will not be prejudiced in its ability to thoroughly investigate claims against its insureds. Amer. Country Ins. v. Efficient Constr. Corp., 225 Ill. App. 3d 177, 587 N.E.2d 1073, 1075, 167 Ill. Dec. 458 (Ill. App. Ct. 1992). The purpose of

notice provisions which require notice of a lawsuit, however, is to enable the insurer to locate and defend the suit. Rice, 294 Ill. App.3d at 807 (citing Kerr v. Illinois Central R.R. Co., 283 Ill. App.3d 574, 219 Ill. Dec 81, 670 N.E.2d 759(Ill. App. Ct. 1996)).

Rogers contends that Great West must show that it was prejudiced by Rogers late notice in order to be relieved of its duty to indemnify. Most Illinois courts and courts interpreting Illinois law have held, however, that prejudice need only be shown in notice of the lawsuit cases. See U.S. Fidelity & Guaranty Company v. The John Buck Company, No. 00 C 2460, 2001 U.S. Dist LEXIS 17581 (N.D. Ill. Oct. 23, 2001); Illinois Founders Ins. Co. v. Barnett, 304 Ill. App.3d 602, 611, 237 Ill. Dec. 605, 710 N.E.2d 28 (Ill. App. Ct. 1999); see also Home Ins. Co. v. Three I Truck Line, Inc., 59 F.Supp.2d 734, 736 (N.D. Ill. 1999); Montgomery Ward & Co., 753 N.E.2d at 1005 (holding insurer need not show it was prejudiced because it was a notice of occurrence case); Cincinnati Ins. Co. v. Baur's Opera House, Inc., 296 Ill. App.3d 1011, 1018, 230 Ill. Dec. 624, 694 N.E.2d 593 (Ill. App. Ct. 1998) (holding insurer must show prejudice as a result of insured's failure to timely notify it of a lawsuit). Thus, Illinois law provides that the failure to fulfill a condition precedent that requires timely notice of potential claims relieves the insurer of any duty to defend or indemnify the insured. Indus. Coatings Group, Inc. v. Amer. Motorists Ins. Co., 276 Ill. App. 3d 799, 658 N.E.2d 1338, 1343, 213 Ill. Dec. 317 (Ill. App. Ct. 1995).

The issue then becomes whether Rogers notice of occurrence was timely. In general, the duty to notify the insurer of an occurrence arises at the point in time that it would appear "to a reasonably prudent person that a claim potentially covered by the policy may be brought against the insured." Id. (internal quotation omitted). If an insured has a justifiable excuse for its delay, a lengthy passage of time is not an absolute bar to coverage. Sonoco Bldgs., Inc. v. Am. Home

Assurance Co., 877 F.2d 1350, 1356 (7th Cir. 1989) (internal quotation omitted); see, e.g., Atlanta Int'l Ins. Co. v. Checker Taxi Co., 214 Ill. App. 3d 440, 574 N.E.2d 22, 26, 158 Ill. Dec. 228 (Ill. App. Ct. 1991) (holding that a two-year delay between the accident and notice to the excess insurance company was not unreasonable); Barrington Consol. High Sch. v. Amer. Ins. Co., 58 Ill. 2d 278, 319 N.E.2d 25, 27-28 (Ill. 1974) (holding that a four-year delay in notice was reasonable where the insured had no expectation of suit). Therefore, we must consider all of the facts and circumstances surrounding a particular case and apply a standard of reasonableness in order to determine whether notice in a particular case was timely. Twin City Fire Ins. Co., 639 N.E.2d at 588.

Most of the cases cited in support of Rogers' argument that the notice was timely involved situations where the insured waited a significant period of time after the occurrence, but before or soon after a lawsuit was filed, to notify the insurer. In this case, however, the insured waited until June 14, 2000 before providing notice to its insurer even though suit had been filed on April 15, 1998 and the occurrence took place in February 1998. In cases where a significant period of time passed between the filing of a law suit and notification to the insurer, the Illinois courts have found notice to be untimely. See, e.g., Indus. Coatings Group, Inc., 276 Ill. App. 3d 799, 658 N.E.2d 1338, 213 Ill. Dec. 317 (Ill. App. Ct. 1995) (finding that notice to the insurer fourteen months after the United States Environmental Protection Agency notified appellant that it would be held liable for clean-up costs was untimely); Twin City Fire Ins. Co., 266 Ill. App. 3d 1, 639 N.E.2d 584, 203 Ill. Dec. 264 (Ill. App. Ct. 1993) (holding that notice was untimely where suit was filed in July 1986 and notice was not provided to insurer until April 1989); Sisters of Divine Providence, 117 Ill. App. 3d 158, 453 N.E.2d 36, 72 Ill. Dec. 731 (Ill. App. Ct. 1983)

(finding that the duty to notify was breached where a lawsuit was filed in April 1977 and notice was not conveyed to the insurer until April 1980).

What constitutes reasonable notice, usually a question of fact, becomes a question of law when, as in this case, the facts are not in controversy. Cincinnati Ins. Co. v. Baur's Opera House Inc., 296 Ill. App.3d 1011, 1018, 694 N.E.2d 593, 598 (Ill. App. Ct. 1998); American Family Mut. Ins. Co. v. Blackburn, 208 Ill. App. 3d 281, 288, 566 N.E.2d 889, 894 (Ill. App. Ct. 1991). It is undisputed that Johnson was fired in February 1998, that he filed suit against Rogers in April 1998, and that Rogers notified Great West of the suit in June 2000 (over two years after the occurrence). Rogers claims that its delay was justifiable because it had never before been named in an employment discrimination claim. Rogers referred the Johnson claim to outside legal counsel for advice and handling.

While Illinois law recognizes an exception to the late notice doctrine where the insured exercised reasonable prudence in inquiring about its potential insurance coverage and diligence in attempting to effect notice, here the undisputed facts establish that Rogers did neither. See Northbrook Property and Casualty Ins. Co. v. Applied Systems, 313 Ill. App.3d 457, 729 N.E.2d 915, 246 Ill. Dec. 264 (Ill. App. Ct. 2000). Despite Rogers claim to the contrary, Rogers was not an unsophisticated insured. Rogers employed outside counsel that could have made a coverage evaluation. By failing to review the policies and the complaint together to determine whether personal injury coverage was implicated, Rogers, and specifically its outside counsel, failed to act like a reasonably prudent insured under the circumstances. A reasonable insured's attorney would have examined the complaint and relevant policy provisions to gauge the applicability of coverage . Rogers has failed to set forth a reasonable explanation for its failure to investigate

coverage under the Great West Policy. The fact that none of the individuals or entities with a duty to protect Rogers' interests in securing coverage for the claims asserted in the Johnson Action actually did so is a lapse for which Great West will not be held accountable. Accordingly, Rogers' failure to notify Great West of the occurrence giving rise to the lawsuit is unreasonable as a matter of law.

4) Great West should not be estopped from asserting its coverage defenses

Rogers, in its response to Great West's complaint, sets forth estoppel as an affirmative defense. Great West defended Rogers under a reservation of rights. Rogers contends that Great West improperly assumed control of the settlement discussions with Johnson and, by mishandling such negotiations, prejudiced Rogers' ability to settle with Johnson before verdict. When the insurer defends its insured it is obligated to provide an effective defense, "and it must not put its own interests ahead of those claiming to be insureds." Willis Corroon Corp. v. The Home Ins. Co., 203 F.3d 449, 452 (7th Cir. 2000) (citing Briseno v. Chicago Union Station Co., 197 Ill. App. 3d 902, 557 N.E.2d 196, 145 Ill. Dec. 426 (Ill. App. 1990)). The insurer can be estopped from asserting policy defenses if the insurer fails to meet these obligations and the insured is prejudiced. Willis Corroon Corp., 203 F.3d at 452 (citing Maryland Cas. Co. v. Peppers, 64 Ill. 2d 187, 355 N.E.2d 24 (1976)).

Prejudice is not presumed from the entry of an appearance and assumption of the defense by the insurer. Peppers, 64 Ill.2d at 196, 355 N.E.2d at 29. Rather, in order to establish estoppel against an insurer, it is the insured's burden to prove "by clear, concise and unequivocal evidence that it was prejudiced by [the insurer's] assumption of the defense." Home Ins. Co. v. Three I Truck Line, Inc., 95 F.Supp.2d 901, 906 (N.D. Ill. 2000). The question in such cases is not

whether the insured could have achieved a better result but whether the insurer "usurped control of the defense" from the insured. Id.

Rogers analogizes the case at bar to Three I Truck Line. In Three I Truck Line, Home Ins. Co. was an excess carrier who received notice of the claim against Three I shortly before trial. Home assigned counsel to defend Three I, reserving its right to assert a late notice defense. Within days, Home told Three I that Home's assigned counsel would take the lead role in the defense, and that Home would not pay for Three I's personally selected counsel who had prepared the case for trial. At trial, the new defense counsel did not use any of the expert witnesses that had been retained by Three I's original counsel, they did not cross-examine any witnesses as to the plaintiff's claimed damages, and they did not present any of the motions in limine prepared by Three I's original counsel. Then, after a multi-million dollar verdict was entered, Home negotiated a settlement during the appeal, but did so barring Three I's participation in the settlement discussions. The court found Home was estopped from asserting its coverage defenses as a matter of law because Three I was prejudiced by Home's conduct. Home's assumption of the defense and exclusion of Three I from settlement negotiations was prejudicial not because the defense may or may not have been better than the originally-planned defense, but because the acts demonstrated the "iron clad control that was imposed on Three I." Id. at 907, n.11.

Rogers claims that just like Home Ins. Co. in Three I, Great West usurped control of Rogers' defense. Rogers does not, nor could it, allege that Great West ever required Rogers to obtain different counsel or take any action in connection with the defense of the Johnson Action that was not in Rogers' best interests. Great West never insisted that Rogers retain different

-14-

expert witness than those selected by its firm Michael Best & Friedrich. Great West never refused to pay any invoices submitted by any experts retained by Michael Best & Friedrich on behalf of Rogers and Tankstar prior to trial. Rogers' and Tankstar's counsel made all the decisions regarding which witnesses Rogers and Tankstar would call at trial and the manner in which cross-examinations of Johnson's witnesses would be conducted. Great West did not dictate which exhibits were to be used at trial or which motions in limine would be presented. Further, Rogers and its counsel decided whether the Johnson Action should be tried before a judge or a jury as well as how to conduct closing arguments on behalf of Rogers and Tankstar. It is thus undisputed that Great West did not in any way control the substantive defense unlike Three I, where Home Ins. Co. controlled virtually all aspects of the trial.

Rogers rests its allegations that Great West usurped control on Great West's conduct during settlement negotiations that took place after all of the substantive evidence had been presented to the jury and only closing arguments, the court's charge to the jury and deliberations remained. Rogers concedes that Great West's representative at trial, James Discenza, did absolutely nothing to interfere with counsel's preparation and presentation of its substantive case. Thus, the verdict in the Johnson Action did not reflect any strategic input or control on behalf of Great West. Rogers' lead counsel testified at his deposition that as of the night prior to closing arguments, he expected an adverse verdict for compensatory and punitive damages to be rendered against Rogers and Tankstar as a result of, among other things, having been given no opportunity to present any defense based on the trial court's rulings on the motions in limine barring all of Rogers' and Tankstar's defenses. However, he did not have a conversation with

Great West's representative at trial regarding these projections, much less demand that Great West immediately take steps to settle the case.

Mr. Discenza led the settlement negotiations in the case but always had Rogers' counsel present. The relationship between Rogers' and Johnson's counsel was strained in part due to the fact that Rogers' counsel exceeded the bounds of its settlement authority during settlement discussions with Johnson's counsel in December 2000. The details of the specific offers are not entirely clear but prior to closing arguments Mr. Discenza offered Johnson $100,000 to settle the claim. Johnson's counsel rejected that claim and Mr. Discenza offered $175,000 to settle the claim. Johnson's counsel did not make a counteroffer. It is undisputed that Johnson's counsel never gave anyone associated with Rogers' a specific dollar figure demand to settle the Johnson Action at any time during the Johnson trial. Rogers therefore simply cannot prove by the clear and convincing evidence that Illinois law requires that Great West usurped total control of the defense of the Johnson Action to Rogers' prejudice or that Great West's conduct with respect to the settlement negotiations otherwise had any link whatsoever to the jury verdict ultimately entered against Rogers. Unlike in Three I, the insured's ability to protect its own interests was not subverted by Great West's conduct. Three I Truck Line, Inc., 95 F. Supp.2d at 906. Rogers' counsel was present at all settlement negotiations and never voiced any objection to the way in which Mr. Discenza handled the settlement discussions. Thus, no grounds exist to estop Great West from relying on the coverage defenses it timely asserted against Rogers in connection with the Johnson Action.

B.   Rogers' Motion for Summary Judgment

Rogers cross motion for summary judgment alleges 1) that estoppel renders all Great West's coverage defenses moot; 2) Great West usurped Rogers' right to control critical settlement negotiations, prejudicing Rogers as a matter of law; and 3) Great West is not entitled to summary judgment even if the court considers the late-notice defense.

As previously explained, Great West is not estopped from raising its coverage defenses. An entity may not insure itself against the imposition of punitive damages for its own misconduct. Estoppel can not create coverage for punitive damages where none previously existed. Accordingly, Rogers' motion for summary judgment on that ground is denied.

Rogers asserts, as it did in its response to Great West's motion for summary judgment, that Great West usurped Rogers' right to control critical settlement negotiations. Again, as stated above, Rogers has not met its burden under Illinois law of coming forth with clear and convincing evidence that Great West usurped total control of the settlement negotiations. To the contrary, the evidence shows that Mr. Discenza led the settlement negotiations and instructed Johnson's attorneys to speak with him due to misunderstandings regarding settlement authority and that Rogers' counsel was present during all settlement discussions. Accordingly, Rogers' motion for summary judgment on this ground is denied.

Finally, Rogers argues that Great West is not entitled to its late notice defense because Rogers acted reasonably under the circumstances and Great West must prove that it was prejudiced. As previously explained, Rogers had counsel representing its interests and Rogers' and its counsel's failure to look into insurance coverage was unreasonable. Further, Great West need not show that it was prejudiced by Rogers' delayed notice because the policy required notice of occurrence. Thus, Rogers' motion for summary judgment is denied.

## Conclusion

For the foregoing reasons, summary judgment is granted in favor of Great West. Great West has met its burden of showing that there are no genuine issues of material fact regarding the untimeliness of Rogers' notice, the absence of coverage for Tankstar and the absence of coverage for the punitive damages awarded against Rogers. As there is no legal justification for estopping Great West from relying on its valid coverage defenses, Great West is entitled to judgment against Rogers and Tankstar as a matter of law. Accordingly, Rogers' cross motion for summary judgment is denied.

Enter:

David H. Coar
United States District Judge

Dated: DEC 6 - 2001